# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**
February 10, 2016
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**VANESSA BUCHANAN,**
**Claimant Below, Petitioner**

**vs.)    No. 14-1089** (BOR Appeal No. 2049415)
(Claim No. 2009056608)

**TOYOTA MOTOR MANUFACTURING WV, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Vanessa Buchanan, by Patrick K. Maroney, her attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Toyota Manufacturing WV, Inc., by James W. Heslep, its attorney, filed a timely response.

This appeal arises from the Board of Review's Final Order dated September 24, 2014, in which the Board affirmed a April 8, 2014, Order of the Workers' Compensation Office of Judges. In its Order, the Office of Judges affirmed the claims administrator's March 27, 2013, decision to grant Ms. Buchanan a 1% permanent partial disability award. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Buchanan, an assembly line worker at Toyota Manufacturing WV, Inc., developed bilateral cubital and carpal tunnel syndrome in the course of and as a result of her employment. On January 21, 2011, an independent medical evaluation from Marsha Bailey, M.D., was completed. Dr. Bailey's diagnosis was chronic right elbow pain, right ulnar neuropathy post right cubital tunnel release, in-situ cubital tunnel release with removal of scar, and right ulnar subcutaneous transposition. She also diagnosed chronic left elbow pain post left cubital tunnel

1

release without symptoms of ulnar neuropathy. Dr. Bailey opined that Ms. Buchanan's bilateral carpal tunnel syndrome was treated successfully with surgery and she had full resolution of her symptoms. She noted no residual symptoms of carpal tunnel in either hand. Dr. Bailey found that Ms. Buchanan was at her maximum degree of medical improvement. Dr. Bailey opined Ms. Buchanan's range of motion measurements were invalid for her left and right wrist. Her left elbow range of motion was normal. Dr. Bailey recommended 1% impairment for the right elbow extension deficit, but said that the sensory exam was normal. Dr. Bailey found 0% for left cubital tunnel syndrome and 4% upper extremity impairment for right ulnar nerve and cubital tunnel syndrome on the right. Thus, in all, she found 5% upper extremity impairment, which converted to 3% whole person impairment. Because Ms. Buchanan had previously received 7% permanent partial disability, it was her opinion that she was not due any additional impairment award. On March 2, 2011, based on Dr. Bailey's report, the claims administrator held Ms. Buchanan was fully compensated and granted no additional permanent partial disability.

On May 18, 2011, an independent medical evaluation performed by Bruce Guberman, M.D., was issued. Dr. Guberman opined that she was at her maximum degree of medical improvement for her right arm. For the left, however, he recognized that Stanley Tao, M.D., recommended ulnar nerve transposition. Dr. Guberman agreed with the recommendation of surgery. For right carpal tunnel, Dr. Guberman found 10% upper extremity impairment, which converted to 6% whole person impairment for her carpal tunnel syndrome. For cubital tunnel syndrome, he found 20% upper extremity impairment or 12% whole person impairment. Dr. Guberman noted Ms. Buchanan had received 4% permanent partial disability for her cubital tunnel and thus he recommended an additional 8% whole person impairment. For left carpal tunnel syndrome he found 10% upper extremity impairment. For cubital tunnel, Dr. Guberman found 11% impairment for a total of 20% upper extremity impairment or 12% whole person impairment. He subtracted the prior 3% award and thus recommended an additional 8% for the right side and 9% for the left side. These combined for a total of 16% whole person impairment.

On December 15, 2011, a report from Suresh G. Kumar, M.D., was completed. Dr. Kumar noted Ms. Buchanan had another car accident in August of 2011 which was not work related. Since then, her pain was worse. On September 18, 2012, the Office of Judges determined that surgery for the left elbow should be authorized. On September 28, 2012, an independent medical evaluation from Dr. Mukkamala was made available. Dr. Mukkamala felt Ms. Buchanan was at her maximum degree of medical improvement. Dr. Mukkamala opined she suffered 4% whole person impairment for the right upper extremity using Tables, 11, 12, and 15 of the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993). Using the same Tables as for the right upper extremity, he found 3% whole person impairment for the left upper extremity. Combining these ratings, Dr. Mukkamala found that she had 7% whole person impairment for her bilateral carpal tunnel syndrome. Dr. Mukkamala noted that he had examined Ms. Buchanan in the past and calculated 7% whole person impairment. Dr. Mukkamala did not find objective evidence indicating that her condition had worsened. He said that there was no other identifiable etiology for her impairment. However, he advised that there had been a car accident resulting in a cervical sprain and a disc osteophyte complex in her neck was probably responsible for her current symptoms.

2

On January 15, 2013, the Office of Judges reviewed the claims administrator's March 2, 2011, decision not to grant any additional permanent partial disability award. The Office of Judges determined it was prudent to remand the issue of Ms. Buchannan's permanent partial disability back to the claims administrator for another examination. On March 19, 2013, Dr. Mukkamala's report was made available. Ms. Buchanan reported numbness in both hands. Dr. Mukkamala concluded she had reached her maximum degree of medical improvement. Using the American Medical Association's *Guides*, Tables 11, 12, and 15, Dr. Mukkamala found 4.94%, upper extremity impairment, which he rounded to 5% upper extremity impairment. For the ulnar nerve, he found 2.1% upper extremity impairment, which rounded to 2% upper extremity impairment. He combined the impairments and found 7% upper extremity impairment, which converted to 4% whole person impairment. Dr. Mukkamala concluded Ms. Buchanan had 4% whole person impairment for each upper extremity, for a combined total of 8% whole person impairment. Because she had already received a 7% award he recommended 1% permanent partial disability award. Based upon Dr. Mukkamala's report, the claims administrator granted a 1% permanent partial disability award on March 27, 2013. Ms. Buchanan protested.

The Office of Judges determined that Ms. Buchanan was not entitled to any more than 8% permanent partial disability award for both her bilateral cubital tunnel syndrome and her bilateral carpal tunnel syndrome. The Office of Judges determined that the report of Dr. Mukkamala was more reliable because it occurred later in time. Dr. Guberman opined that she had 16% whole person impairment on May 18, 2011. In his report, Dr. Guberman noted that she should undergo left ulnar transposition surgery and that if it was authorized she would not be at her maximum degree of medical improvement until after the surgery. The surgery was approved by the Office of Judges on September 18, 2012. Dr. Guberman never reexamined Ms. Buchanan. After her surgery, Dr. Mukkamala examined her and determined that she was only entitled to 8% permanent partial disability. The Office of Judges determined that, because Dr. Mukkamala was in a better position to evaluate Ms. Buchanan, his report was more persuasive.

We agree with the Office of Judges and the Board of Review. The Office of Judges determined that Dr. Mukkamala's report was more persuasive because he was the only physician to examine her after her left ulnar transposition. Even Dr. Guberman admitted that his report could be changed if she was authorized for a left ulnar nerve transposition. She was granted her surgery. Dr. Mukkamala was the only physician to examine her after the surgery. Because the evidence indicates that Dr. Mukkamala was in the best position to evaluate her condition, it was not in error to rely on his report.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: February 10, 2016**

**CONCURRED IN BY:**
Chief Justice Menis E. Ketchum
Justice Robin J. Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II